# In the United States Court of Federal Claims

**No. 14-854C**
**Filed: April 15, 2015**

```
* * * * * * * * * * * * *
```

| | |
|---|---|
| **KENNETH RIPPETOE,** | * |
| | * **Motion to Dismiss; Breach of** |
| **Plaintiff,** | * **Express and Implied in Fact** |
| | * **Contract; Fraud, Deceit;** |
| **v.** | * **Negligent Misrepresentation;** |
| | * **Negligence; Infliction of** |
| **UNITED STATES,** | * **Emotional Distress.** |
| | * |
| **Defendant**. | * |

```
* * * * * * * * * * * * *
```

**Patrick Benedek**, Alves & Benedek, Manhattan Beach, CA, for plaintiff.

**Jessica R. Toplin**, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her were **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, **Robert E. Kirschman, Jr.**, Director, Civil Division, United States Department of Justice, and **Reginald T. Blades, Jr.**, Assistant Director.

## O R D E R

**HORN, J.**

## FINDINGS OF FACT

Plaintiff Kenneth Rippetoe filed a complaint in the United States Court of Federal Claims against the United States Department of Veterans Affairs (VA), Greater Los Angeles Health Care System (GLA). The complaint alleges "the VA's failure to conform to the express and implied terms set forth in a settlement agreement entered into between the parties, which required the VA to modify and clean Mr. Rippetoe's personnel record to show a 'resignation,' as opposed to 'removal' from services" resulted in a breach of contract. In the complaint, plaintiff also alleges tortious actions for which he argues the government is responsible.

Plaintiff claims he "was employed by the VA for around ten years, with some gaps in employment," with the last term of employment beginning on January 22, 2008. According to the complaint, "he worked as a General Engineer, Grade 12, Step 4, with a salary of $84,308." Plaintiff claims that from January 2008 to December of 2010, he "attained successive promotions and accolades for his service with the VA." According to plaintiff, "[b]eginning on or around December 2010, Mr. Rippetoe observed irregularities and suspicious fraudulent activities by his co-workers, management, and/or VA's contractors" and "was exposed to sexual harassment and discrimination by a co-worker and/or management." Mr. Rippetoe claims he "reported such incidents and behavior to his supervisors and superiors, the Office of Special Counsel, the Equal Employment Opportunity Commission, and the Office of the Inspector General, amongst others." Plaintiff alleges that:

> Not only did the VA condone the wrongful behavior and activities reported by Mr. Rippetoe, but as a result of his reporting, Mr. Rippetoe was wrongfully treated (as if *he* was the wrongdoer), harassed, humiliated, damaged, retaliated and discriminated against by the VA, and ultimately threatened with termination of employment.

(emphasis in original). Plaintiff claims that despite his "attempts to keep his job, he was removed from service on August 12, 2011."

Plaintiff states he appealed his removal to the U.S. Merit Systems Protection Board (MSPB). On December 16, 2011, the VA and Mr. Rippetoe entered into a Settlement Agreement. The terms of the Settlement Agreement included that the VA agreed to pay Mr. Rippetoe $75,000.00, and Mr. Rippetoe's attorney, Patrick Benedek,[1] $31,500.00, on the condition that Mr. Rippetoe voluntarily withdraw his petition for appeal with the MSPB. The VA also agreed to "cancel Appellant's August 12, 2011 removal and replace it with a resignation effective as of August 12, 2011. The Appellant's Official Personnel File will contain only the resignation." Mr. Rippetoe agreed "to list only the Chief, Employee/Labor Relations GLA as the Agency Report of Contact for any official agency information." The VA agreed to

> respond to any future inquiry by any prospective employer, provided the inquiry has been made to the Chief, Employee/Labor Relations GLA, that:
>
> > i) The Appellant [plaintiff] was employed as a General Engineer GS-801 by GLA from 1/22/2008 through the date of resignation.
> >
> > ii) The Appellant voluntarily resigned for personal reasons on the date of resignation.

Finally, Mr. Rippetoe agreed not to "seek, apply for, nor accept, employment with the VA GLA or any of its branches, posts or subsidiaries."

---

[1] Mr. Benedek is also plaintiff's counsel of record in the above-captioned case.

The Settlement Agreement also provided:

In return for, and in consideration of the action specified below, Appellant hereby voluntarily withdraws in its entirety his petition for appeal, MSPB Case No. SF-0752-11-0850-1-1. In doing so, Appellant waives all rights to further administrative processing and all rights to file a civil action in connection with his removal from employment with the Agency. Appellant further agrees to waive any and all claims, known or unknown, including appeals, grievances, Equal Employment Opportunity Commission (EEOC) complaints (including but not limited to EEOC Case No. 200P-0691-2011103353), liabilities, demands, obligations, expenses, damages of any kind or nature, including claims of prohibited discrimination, compensatory damages, consequential damages, actions and causes of actions of whatever kind or nature (including, without limitation, any statutory, civil or administrative claim, before any court or administrative forum) arising from the issues of the above-identified appeal. Appellant further waives his right to pursue future causes of action against the Agency based on any and all facts in existence as of the date of Appellant's execution of this Agreement, with the exception of any claims that may arise by reason of alleged breach of any terms of this Settlement Agreement. This Agreement does not entitle Appellant to any monetary damages including, but not limited to, compensatory damages, medical bills, attorney fees, or costs, except as provided herein.

Furthermore, paragraph 11 of the Settlement Agreement stated: "The parties request that this Agreement be entered into the Board's record of this appeal so the Board may retain jurisdiction to enforce this Agreement." The Settlement Agreement was incorporated into the record and the Board stated that it "retains jurisdiction to enforce its terms" on December 20, 2011, when the MSPB issued its initial decision dismissing plaintiff's case. Significantly, paragraph 12 of the Settlement Agreement indicated:

Appellant acknowledges that if he believes the Agency has not complied with the terms of this Agreement, he shall file a petition for enforcement with the MSPB within a reasonable amount of time from the date he knew of the alleged breach, and describe specifically the reason for believing there is noncompliance. The parties agree that if a petition to enforce the terms of this agreement is filed with the MSPB, the prevailing party shall be entitled to documented reasonable attorney's fees from the losing party, as determined by the MSPB.

As noted, on December 20, 2011, the MSPB issued an initial decision approving the Settlement Agreement and dismissing the MSPB appeal. The MSPB informed Mr. Rippetoe that "[t]his initial decision will become final on **January 24, 2012,** unless a petition for review is filed by that date or the Board reopens the case on its own motion."

(emphasis in original). The record does not contain a petition for review filed by the plaintiff.

Mr. Rippetoe alleges in his complaint in this court that since entering "into the Settlement Agreement, he applied for over one hundred job openings, for which he was qualified, at various federal agencies." He further alleges that he was unable to secure employment, "and as a result, he began to suspect that the VA might have wrongfully reported the circumstances surrounding his termination, in violation of the Settlement Agreement language." According to plaintiff, "[u]pon investigation, Mr. Rippetoe found that his personnel records with the VA, specifically the Notification of Personal Action, Standard Form 50 ('SF-50') still characterized his separation from the VA as a 'removal', in direct violation of the Settlement Agreement language and requirements."

On August 29, 2012, according to the complaint, plaintiff's attorney, Mr. Benedek, e-mailed Maureen Ney, the VA's attorney who had handled the MSPB appeal and Settlement Agreement, with a copy to Mary Moore, another VA employee, "to request a correction in Mr. Rippetoe's Notice of Personnel Action to conform to what had been agreed to in the Settlement Agreement." Plaintiff claims that "Mr. Benedek's correspondence also indicated that the VA's failure to conform to the requirements in the Settlement Agreement by not replacing the term 'removal' with the term 'resignation,' could have been detrimentally affecting Mr. Rippetoe's chances of attaining new employment with other agencies." Ms. Ney e-mailed plaintiff's counsel on August 29, 2013, confirming that, "[t]he cancellation document has been permanently removed from Mr. Rippetoe's OPF" (Official Personnel File) on August 29, 2013 at "approximately 4:50 p.m." In another August 29, 2013 email, Ms. Moore indicated that, "I am the person to have been contacted and as of this date, I have not been contacted regarding a job reference." Plaintiff's complaint claims that "[s]oon after the August 29, 2013 correspondence, and after the VA finally conformed to the requirement of the Settlement Agreement, Mr. Rippetoe began getting called for job interviews, as well as job offers for federal job openings he applied for."

Plaintiff alleges and "believes that the VA's failure to comply with the Settlement Agreement prevented Mr. Rippetoe's chances of getting federal jobs he applied for, and was fully qualified for, during the period from December 2011 to August 2013." Plaintiff also states:

> that the VA intentionally or recklessly failed to comply with the Settlement Agreement counting on a loophole of the law, whereby the VA would not be penalized for breaching the agreement if Mr. Rippetoe would have raised the breach under the jurisdiction of the MSPB, who would simply strike the Settlement Agreement, requiring Mr. Rippetoe to return all monies received from the VA.

Therefore, in his complaint, plaintiff alleges six counts: "Breach of Written Contract" and "Breach of Implied Contract" for the VA's failure to correct plaintiff's

4

personnel file, as well as "Fraud and Deceit," "Negligent Misrepresentation," "Negligence," and "Infliction of Emotional Distress."

Plaintiff seeks redress in the amount of $2,300,000.00 and declaratory relief, as follows:

(a) For damages incurred as a result of Defendant's actions and/or omissions, according to proof at trial, but not less than three hundred thousand dollars ($300,000.00), together with interest thereon at the permissible rate from a date and in an amount according to proof at trial;

(b) For damages incurred as a result of Defendant's fraudulent conduct, according to proof at trial, but not less than One Million Dollars ($1.000,000.00);

(c) For declaratory relief deeming the timeliness of cancellation of Mr. Rippetoe's 'removal' from his Office Personnel File, and subsequent annotation that he had 'resigned' from service a valid and enforceable condition of the December 2011 Settlement Agreement;

(d) For punitive damages as applicable, according to proof at trial, but not less than One Million Dollars ($1.000,000.00);

(e) For reasonable attorney fees and costs of suit as allowed by law;

(f) For such other and further relief, decrees, order, and judgments as the Court deems just, necessary or appropriate.

In response to plaintiff's complaint, defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2014) for lack of jurisdiction and failure to state a claim upon which relief can be granted. Specifically, defendant argues, "[t]his Court does not possess jurisdiction to entertain Mr. Rippetoe's claim for breach of written contract because the settlement agreement that Mr. Rippetoe entered into with the VA cannot be fairly interpreted as mandating monetary compensation in the event of breach" and the court should dismiss the breach of implied contract for failure to state a claim because "Mr. Rippetoe entered into an express written contract covering the same subject matter as the implied contract that he alleges existed." Defendant also claims that the remainder of plaintiff's claims are beyond the jurisdiction of this court, including plaintiff's tort claims.

## DISCUSSION

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not

exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." <u>Henderson ex rel. Henderson v. Shinseki</u>, 562 U.S. 428, 131 S. Ct. 1197, 1202 (2011); <u>see</u> <u>also</u> <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 514)); <u>Special Devices, Inc. v. OEA, Inc.</u>, 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing <u>Johannsen v. Pay Less Drug Stores N.W., Inc.</u>, 918 F.2d 160, 161 (Fed. Cir. 1990))); <u>View Eng'g, Inc. v. Robotic Vision Sys., Inc.</u>, 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506; <u>see</u> <u>also</u> <u>Cent. Pines Land Co., L.L.C. v. United States</u>, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506)); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506; <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir.), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2004), <u>cert.</u> <u>denied</u>, 545 U.S. 1127 (2005); and <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998))); <u>Pikulin v. United States</u>, 97 Fed. Cl. 71, 76, <u>appeal dismissed</u>, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1369 (Fed. Cir.) (citing <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1485 (Fed. Cir.), <u>reh'g</u> <u>denied</u> <u>and</u> <u>en</u> <u>banc</u> <u>suggestion</u> <u>declined</u> (Fed. Cir.), <u>cert.</u> <u>denied</u>, 525 U.S. 826 (1998)), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2004), <u>cert.</u> <u>granted</u> <u>in</u> <u>part</u> <u>sub.</u> <u>nom</u> <u>Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.</u>, 546 U.S. 975 (2005), <u>cert.</u> <u>dismissed</u> <u>as</u> <u>improvidently</u> <u>granted</u>, 548 U.S. 124 (2006).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal

government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401–02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts).")." "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 U.S. 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

Breach of Contract Claims

Plaintiff argues that the VA breached the Settlement Agreement and tries to rely on both express and implied breach of contract theories. Plaintiff cites to Cunningham v. United States, 748 F.3d 1172 (Fed. Cir. 2014), for the proposition that the Settlement Agreement at issue is money mandating because: (1) the agreement lacks wording expressly precluding money damages in the event of a breach; (2) monetary compensation can be inferred through the relationship to plaintiff's future employment;

and (3) since plaintiff's claims are founded upon a contract with the United States, this court has jurisdiction over plaintiff's claim for money damages. See Cunningham v. United States, 748 F.3d at 1177–78 ("[T]here is no language in the agreement 'indicating that the parties did not intend for money damages to be available in the event of breach.'" (quoting Holmes v. United States, 657 F.3d 1303, 1316 (Fed. Cir. 2011))). Plaintiff argues that "'*contracts are to be interpreted as a whole, giving meaning and effect to each provision of the contract*,'" (quoting Srivastaba v. Russell's Bar-B-Q, Inc., 118 Ill. App. 3d 726, 730 (1988)) (emphasis in original), and that the Settlement Agreement here, "**interpreted as a whole, contains no language disavowing money damages**." (emphasis in original).[2] According to plaintiff, the Settlement Agreement expressly permits plaintiff to "sue the Agency for 'any claims that may arise by reason of alleged breach of any terms of this Settlement Agreement'" and that "any preclusion of money damages are only in reference to the underlying case between Rippetoe and the VA, and not to an eventual breach of that Agreement."

Plaintiff also asserts various alternative arguments. First, plaintiff argues that the "MSPB's jurisdiction under the Agreement is moot and not exclusive." According to plaintiff, once "the VA complied with its final obligation under the Agreement"—to correct Mr. Rippetoe's past employment record—"the Agreement was fully complied with by the parties, thus making Plaintiff's need to seek assistance from the MSPB moot." Plaintiff states: "Once the terms are complied with as alleged in the present case, and in light of the Tucker Act permitting the suit for damages, jurisdiction is no longer exclusive in the MSBP, rather proper in this Court." Second, plaintiff argues that "[e]ven if Plaintiff did seek a decision from MSPB, such decision would not foreclose the present action" due to the MSPB's limited authority to grant relief. According to plaintiff, since the MSPB can only enforce compliance with the agreement, but not award money damages, plaintiff is allowed to "'"file two actions in different courts to obtain complete relief in connection with one set of facts,"'" (quoting Cunningham v. United States, 748 F.3d at 1180

---

[2] Although plaintiff is correct that a well-established contract principle is that a contract must be considered as a whole, this principle does not assist plaintiff's argument given the terms of the Settlement Agreement at issue. See Shell Oil Co. v. United States, 751 F.3d 1282, 1305 (Fed. Cir. 2014) (noting that a contract must be interpreted in context, giving meaning to the document as a whole) (citing NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Medlin Constr. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (reviewing the contract as a whole to determine the meaning of relevant provisions); Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract. . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." (citations omitted)); Giove v. Dep't of Transp., 230 F.3d 1333, 1340–41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted). Defendant does not argue otherwise.

(quoting <u>United States v. Tohono O'Odham Nation</u>, 131 S. Ct. 1723, 1734 (2011) (Sotomayor, J., concurring))).

In response, defendant argues that the Federal Circuit in <u>Cunningham</u> and <u>Holmes</u> also specifically "cautioned that the alleged breach of a settlement agreement does not necessarily give rise to Tucker Act jurisdiction." <u>Cunningham v. United States</u>, 748 F.3d at 1176; <u>see</u> <u>also</u> <u>Holmes v. United States</u>, 657 F.3d at 1314 ("That is not to say, however, that the existence of a contract always means that Tucker Act jurisdiction exists."). According to defendant, Tucker Act jurisdiction may be precluded in a contract by: (1) language mandating the use of an alternative, sole remedy; or (2) expressly disavowing money damages. <u>See</u> <u>Cunningham v. United States</u>, 748 F.3d at 1716 ("A settlement that involved 'purely non-monetary relief' . . . would not suffice for establishing Tucker Act jurisdiction.") (quoting <u>Holmes v. United States</u>, 657 F.3d at 1315); <u>see</u> <u>also</u> <u>Doe v. United States</u>, 513 F.3d 1348, 1355 (Fed. Cir. 2008) (holding that the United States Court of Federal Claims did not have jurisdiction to adjudicate an employee's claim of breach of a collective bargaining agreement that provided exclusive procedures to remedy a breach); <u>Todd v. United States</u>, 386 F.3d 1091, 1094–95 (Fed. Cir. 2004) (holding that the United States Court of Federal Claims did not have jurisdiction to adjudicate a Federal Aviation Administration employee's breach of contract claim based on a collective bargaining agreement providing exclusive remedial procedures). Indeed, as explained by the Federal Circuit in <u>Cunningham</u>, "[t]he plaintiff must 'demonstrat[e] that the agreement[ ] could fairly be interpreted as contemplating money damages in the event of a breach.'" <u>Cunningham v. United States</u>, 748 F.3d at 1176 (quoting <u>Holmes v. United States</u>, 657 F.3d at 1315) (modifications in <u>Cunningham v. United States</u>). Defendant also cites <u>Johnson v. United States</u>, 107 Fed. Cl. 379, 385 (2012), which points out that, "[t]he language of a settlement agreement with a federal agency, however, can limit the remedies available to a party and preclude the United States Court of Federal Claims from exercising jurisdiction over a claim of breach."

Defendant correctly argues that, "the settlement agreement expressly mandates that in the case of breach, Mr. Rippetoe '***shall*** file petition for enforcement with the MSPB,'" and that "the settlement agreement includes language that forecloses a potential claim for money damages. . . ." (emphasis in original). Moreover, the court notes that with respect to any money damages, the Settlement Agreement provides only one form of possible money damages, that "if a petition to enforce the terms of this agreement is filed with the MSPB, the prevailing party shall be entitled to documented reasonable attorney's fees from the losing party, as determined by the MSPB." Therefore, it would be Mr. Benedek, and not plaintiff, who could recover monies as a result of a claim.

Defendant also states in its motion to dismiss, that "Mr. Rippetoe acknowledges that he is contractually obligated to seek enforcement from the MSPB and should not be filing his claim with this Court," but "chose to file with this Court because he is dissatisfied with the remedy the MSPB could provide, to rescind the settlement agreement, and does not want to return the money he was paid in connection with the

settlement." The Settlement Agreement provides that in the event of a breach, "all monies, including attorney fees may have to be returned to the Agency in order to restore status quo ante and proceed with processing."

The Federal Circuit in <u>Cunningham</u> recognized that "the content of the underlying agreement and the manner in which the plaintiff sought to enforce that agreement—determined whether the Claims Court had Tucker Act jurisdiction." <u>Cunningham v. United States</u>, 748 F.3d at 1178 (citing <u>VanDesande v. United States</u>, 673 F.3d 1342, 1347, 1350–51 (Fed. Cir. 2012)). Although awarding Mr. Rippetoe $75,000.00 and $31,500.00 in fees to his attorney, the language of the Settlement Agreement at issue in the case currently before the court also includes preclusionary language regarding additional money damages based on the facts underlying plaintiff's claims filed at the MSPB by: (1) expressly disavowing additional money damages, stating "[t]his agreement does not entitle Appellant [plaintiff] to any monetary damages including, but not limited to, compensatory damages, medical bills, attorney fees, or costs, except as provided herein;" and (2) by including language mandating the use of a sole remedy, to file a petition for enforcement with the MSPB, "if he [plaintiff] believes the Agency has not complied with the terms of this Agreement."

Specifically, paragraph 12 of the Settlement Agreement states:

> Appellant acknowledges that if he believes the Agency has not complied with the terms of this Agreement, he shall file a petition for enforcement with the MSPB within a reasonable amount of time from the date he knew of the alleged breach, and describe specifically the reason for believing there is noncompliance.

Nowhere in the Settlement Agreement does the agreement present plaintiff with any other option for enforcement of the Settlement Agreement or a way to receive additional money beyond the $75,000.00 he received and the $31,500.00 his attorney received, based on settlement of the plaintiff's case at the MSPB. Consequently, paragraph 12 is and remains plaintiff's sole remedy in the case of an alleged breach. Therefore, the Settlement Agreement between plaintiff and the VA does not offer a money-mandating foundation upon which to base Tucker Act jurisdiction in this court, and plaintiff has failed to establish this court's jurisdiction to consider plaintiff's breach of contract claims.[3]

---

[3] Plaintiff does not attempt to argue that the implied and express provisions of the contract do not cover the same subject matter. To the contrary, plaintiff asserts in his complaint that the VA's lack of promptness in correcting Mr. Rippetoe's Official Personnel File constituted a breach of an express and implied provisions in the Settlement Agreement. Defendant, therefore, properly argues that Mr. Rippetoe's breach of implied contract claim should be dismissed because plaintiff "fails to state a claim upon which relief can be granted because Mr. Rippetoe entered into an express written contract covering the same subject matter as the implied contract that he alleges existed." (citing <u>Schism v. United States</u>, 316 F.3d 1259, 1278 (Fed. Cir. 2002), <u>cert.</u>

Claims Sounding in Tort

Counts three through six of plaintiff's complaint set forth four claims based on allegations of tortious behavior: (1) "Fraud and Deceit," (2) "Negligent Misrepresentation," (3) "Negligence," and (4) "Infliction of Emotional Distress." Plaintiff states "tort claims stemming from a breach of contract are within the exclusive jurisdiction of this Honorable Court, to the extent that damages exceed $10,000." This court, however, does not possess jurisdiction over claims that sound in tort. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006).

Despite the foregoing, plaintiff asserts, based on Wood[4] v. United States, 961 F.2d 195 (Fed. Cir.), reh'g denied (Fed. Cir. 1992), that this court has jurisdiction over the claims raised in counts three through six because "[c]ase law has long ago stated that Tucker Act jurisdiction is allowed for tort claims when such claims are based on a breach of contract." Id. at 198. Plaintiff cites to the following words in Wood:

> "If contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." Fountain v. United States, 192 Ct. Cl. 495, 427 F.2d 759, 761 (1970). If an action arises "primarily from a contractual undertaking," jurisdiction lies in the Claims Court "regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract." San Carlos Irrigation and Drainage Dist. v. United States, 877 F.2d 957, 960 (Fed. Cir. 1989)

---

denied, 539 U.S. 910 (2003); Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("[A]n implied-in-fact contract cannot exist if an express contract already covers the same subject matter."). The Settlement Agreement entered into the record by the MSPB was such an express contract.

[4] Plaintiff's attorney cites to this case as "Woods v. United States."

(quoting <u>H.F. Allen Orchards v. United States</u>, 749 F.2d 1571, 1576 (Fed. Cir. 1984)).

<u>Id.</u> at 198. (emphasis added).

The words cited by plaintiff's attorney from the decision in <u>Wood</u>, however, must be taken in the context of the facts in <u>Wood</u>, a very different set of circumstances from the facts presented by plaintiff's case. In <u>Wood</u>, the underlying claim was an allegation that the United States had breached an express warranty, i.e., promise, to provide certificates of air worthiness for airplanes purchased at auction by the <u>Wood</u> plaintiff. <u>See id.</u> at 197. The appeal in the United States Court of Appeals for the Federal Circuit was not with regards to the breach of contract claim, but, rather, whether transfer from a Florida Federal District Court with Federal Tort Claims Act jurisdiction, 28 U.S.C. § 1346(b) (1988) to the United States Court of Claims with Tucker Act jurisdiction, 28 U.S.C. § 1491(a) (1988) for contract claims in excess of $10,000.00 was proper.

Plaintiff's attorney, however, quotes only the portion of <u>Wood</u> from which he believes he can create a viable argument for tort jurisdiction in this court. He fails to also quote the Federal Circuit's further statement:

> Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act.

<u>Id.</u> at 198 (quoting <u>Woodbury v. United States</u>, 313 F.2d 291, 295 (9th Cir. 1963)).

Based on the facts presented, the <u>Wood</u> court found that plaintiff's only viable claims depended on the alleged contract claim, and the tort claims were "mere surplusage to the primary claim for breach of contract." <u>See id.</u> Therefore, the Federal Circuit found that jurisdiction in the Court of Federal Claims was proper. The Settlement Agreement which plaintiff alleges was breached in Counts 1 and 2 of his complaint, however, provides no money mandating provision beyond what was already paid to plaintiff, and his attorney, and provides an exclusive forum, other than the United States Court of Federal Claims, in which to seek to remedy any alleged breaches of the Settlement Agreement. Therefore, as determined above, jurisdiction for plaintiff's breach of contract claims is not proper in this court. Absent jurisdiction for the breach of

contract claims, plaintiff cannot bring separate tort claims in this court, and the <u>Wood</u> decision does not support a contrary result.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

      **IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
